# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

# CENTRAL DIVISION

| | |
|---|---|
| UNISHIPPERS GLOBAL LOGISTICS, LLC, a Delaware Limited Liability Company,<br><br>                 Plaintiff,<br>vs.<br><br>DHL EXPRESS (USA), INC., an Ohio Corporation,<br><br>                 Defendant. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:08CV894 DAK |

       This matter is before the court on three motions: (1) Plaintiff Unishippers Global Logistics, LLC's ("Unishippers) Motion for Partial Summary Judgment on DHL's Asserted Defense to Breach of Contract Claim; (2) Defendant DHL Express (USA) Inc.'s ("DHL") Motion for Partial Summary Judgment on Plaintiff's Breach of Contract Claim; and (3) Unishippers' Motion to Strike Declaration of Hank Gibson. The court will also address Unishippers' Objection to Magistrate's Order Denying Plaintiff's Motion to Compel Reseller Rate Information. A hearing on the motions for partial summary judgment was held on February 23, 2011.[1] At the hearing, Unishippers was represented by Timothy C. Houpt and Lewis M. Francis. DHL was represented by Christopher S. Ruhland, Blaine J. Benard, and Khai LeQuang. Before the hearing, the court had carefully considered the memoranda and other materials submitted by the parties. Since taking the matter under advisement, the court has further

---

[1] The court did not hear oral argument on Unishippers' Objection to the Magistrate Order or on Unishippers' Motion to Strike Declaration of Hank Gibson. These items have been decided on the papers.

considered the law and facts relating to these motions. Now being fully advised, the court renders the following Memorandum Decision and Order.

## I. UNISHIPPERS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Unishippers has filed a motion for partial summary judgment on DHL's asserted defense that DHL was not required by the parties' agreement to provide U.S. domestic shipping services to Unishippers, its franchisees and their customers. The court rejected DHL's argument in the court's decision granting Unishippers' motion for a preliminary in junction, and Unishippers now seeks a ruling as a matter of law on this issue.[2]

**A. UNDISPUTED FACTS**

Unishippers was first established in 1987, is headquartered in Salt Lake City, Utah, and franchises its shipping and freight business system throughout the United States. When this case was filed, Unishippers had 273 franchisees throughout the United States, which franchisees marketed and resold shipping and freight services of other companies to numerous U.S. customers. At the time in question, DHL and Unishippers were parties to the October 6, 2008 Reseller Agreement (the "Reseller Agreement").

DHL and Unishippers were also the successors in interest, respectively, to the rights and obligations of Airborne Freight Corporation ("Airborne") and Unishippers Association, Inc., set

---

[2] DHL argues that Unishippers' motion is "procedurally defective" because Unishippers is only moving for summary judgment on only one of its breach of contract claims and/or because Unishippers captioned its motion as a "Motion for Partial Summary Judgment on DHL's Asserted Defense to Breach of Contract Claim." Although the motion was perhaps inartfully styled as seeking judgment on DHL's defense to a claim rather than on Unishippers' claim, it was clear that Unishippers was seeking a declaration that the parties' Agreement required DHL to provide domestic services and that by failing to provide 180 days in advance of its cessation of those domestic shipping services, DHL breached the contract. While this is only one of several claims under Unishippers' broader Cause of Action for breach of contract, there is nothing improper about it. *See* FRCP 56(a).

forth in the National Account Agreement dated September 21, 1994, as amended (the "National Account Agreement"). The Reseller Agreement modified and replaced certain provisions of the National Account Agreement, but otherwise affirmed its general obligations. A copy of the National Account Agreement, as amended, was made an exhibit to the Reseller Agreement.

The parties negotiated and entered into the National Account Agreement either in the State of Utah, where Unishippers was located, or the State of Washington, where Airborne was located. Unishippers entered into the National Account Agreement to obtain low-cost expedited shipping services for the Unishippers franchise system and its customers. DHL/Airborne was the central provider of such services to the Unishippers franchise system and its customers for over fifteen (15) years. DHL acquired Airborne in 2003 to expand its U.S. domestic shipping services, and thereby became Airborne's legal successor to the National Account Agreement with Unishippers.

The National Account Agreement was signed by Gerald Cameron, Airborne's Vice President of Corporate Accounts and Pricing, who was in charge of its U.S. domestic shipping pricing, contracts and reseller channels. Mr. Cameron was also involved in negotiating the terms of the National Account Agreement. At the time it entered into the National Account Agreement with Unishippers, Airborne was predominantly a U.S. domestic shipping company.

Mr. Cameron understood that Airborne was obligated, under the National Account Agreement, to provide U.S. domestic shipping services to Unishippers, its franchisees and customers. He also understood, in negotiating the National Account Agreement, that it was important for Unishippers to have a long-term shipping agreement so that it could build its U.S.

franchise system. Airborne understood that Unishippers could use another carrier for international shipping services if it so chose.

The National Account Agreement was amended a number of times from 1995 to 2002. The recital to each amendment states that:

> Whereas, Shipper and Carrier entered into a National Account Agreement (Agreement) dated September 21, 1994, wherein Carrier agreed to perform certain domestic air express and air freight forwarding services."

The National Account Agreement could only be terminated "in the event of a material breach" by the other party, and after an opportunity to cure. As modified by the October 2008 Reseller Agreement amendment, DHL was allowed to terminate the parties' contract without cause. However, to do so, DHL was required to give Unishippers 180 days prior notice, so that it would have time to transition the Unishippers franchise system operations to a new carrier.

One (1) month after entering into the Reseller Agreement, DHL informed Unishippers in a November 10, 2008 letter that it would cease providing U.S. domestic services on January 30, 2010. DHL also informed Unishippers that it would cease U.S. domestic service even earlier, on December 10, 2008, for Unishippers customers who had not shipped internationally through DHL.

It is DHL's position that the parties' agreement did not require DHL to provide U.S. domestic shipping services, and DHL has opposed Unishippers' motion for summary judgment on this issue and has affirmatively moved for partial summary judgment on this claim, among others, in its own Motion for Partial Summary Judgment.

**B. DISCUSSION**

Courts look "to the language of the contract to determine its meaning and the intent of the contracting parties." *Café Rio, Inc., v. Larkin-Gifford-Overton, LLC*, 2009 UT 27, ¶ 25, 2007 P.3d 1235; *Navlet v. Port of Seattle*, 194 P.3d 221, 234 (Wash. 2008) ("we search for intent through the objective manifest language of the contract itself."). The court concludes that DHL's obligation to provide U.S. domestic shipping services is clear from the four corners of the parties' contract: DHL was required to provide U.S. domestic shipping services to Unishippers for the term of the National Account Agreement, including as amended by the October 6, 2008 Reseller Agreement.

The clear intent and purpose of the contract–entitled the *National* Account Agreement– was to provide domestic shipping services. According to its recitals:

> Whereas, [DHL] is a domestic and international air express and air freight forwarder conducting business pursuant to and in accordance with operating authority issued by the U.S. Dept. of Transportation . . .
>
> Whereas, USA, as a franchised system, and the USA franchisees are, throughout the United States, in the business of offering the services of overnight air express and heavy freight <u>to USA customers within the United States</u> and internationally.
>
> Whereas, USA wishes to offer the services of [DHL] to USA customers and potential USA customers <u>within the United States</u> and internationally.
>
> Whereas, [DHL] wishes to have USA offer its services with the terms and conditions of this Agreement to USA customers <u>within the United States</u> and internationally.

National Account Agreement (emphasis added).[3]

---

[3] Attached as Ex. 2 to Unishippers' Mem. in Supp.

Moreover, even if those recitals did not make the parties' intent sufficiently clear, DHL also specifically agreed "to cooperate with USA's plan to expand and grow in customer base and franchise locations throughout the United States." National Account Agreement, § 8.01 (emphasis added).

Also, Unishippers franchisees were required to use DHL's domestic shipping services. As provided for in the agreement: "Should a USA Franchisee elect to use a competing carrier for domestic overnight or air express under fifty (50) pounds, then [DHL] may terminate this Agreement for the USA Franchisee. . ." Id. at § 8.02 (emphasis added).

Furthermore, each of the first ten (10) amendments to the National Account Agreement confirmed that DHL had agreed to provide domestic shipping services. As stated therein:

> Whereas, Shipper and Carrier entered into a National Account Agreement (Agreement) dated September 21, 1994, wherein Carrier agreed to perform certain <u>domestic</u> air express and air freight forwarding services.

National Account Agreement, Amendment Nos. 1-10, at Exhibit 2 (emphasis added).

Thus, the court concludes that DHL breached the parties' contract by ceasing to provide U.S. domestic services to Unishippers without the required 180-days advance notice.

Moreover, even if there were ambiguity in the contract, the extrinsic evidence demonstrates the parties' intent. Mr. Cameron, the Airborne executive who negotiated the National Account Agreement with Unishippers, and who also signed the agreement on Airborne's behalf, repeatedly testified that it was understood that Airborne was required to provide U.S. domestic shipping services to Unishippers and its franchisees for the length of the agreement. Mr. Cameron also testified that the length of the contractual obligation was a

central component of the agreement and that Airborne understood that Unishippers would rely on the long-term shipping agreement to build its U.S. franchise system. Thus, the extrinsic evidence also demonstrates that it was understood and agreed that DHL would be required to provide U.S. domestic shipping services under the National Account Agreement,

The court also finds no merit to DHL's argument that Unishippers' breach of contract claims fall within the preemption provisions of the Airline Deregulation Act ("ADA"), 49 U.S.C. § 41713 and/or the Federal Aviation Administration Authorization Act ("FAAAA"), 49 U.S.C. § 14501. DHL breached a "self imposed undertaking," and such a "routine" breach of contract claim is not preempted. *See American Airlines, inc. v. Wolens*, 513 U.S. 219, 228 (1995). As a result, Unishippers is entitled to partial summary judgment that DHL breached the parties' contract by failing to provide 180 days advance notice of its cessation of U.S. domestic shipping services. In other words, contrary to DHL's position, the court finds that ceasing domestic shipping services constituted a "termination" under the Agreement.

## II. DHL'S MOTION FOR PARTIAL SUMMARY JUDGMENT

In its motion, DHL has also moved for summary judgment on three other breach of contract theories asserted by Unishippers: (1) DHL contends it is entitled to summary judgment on Unishippers' claim that DHL breached the parties' agreement by stopping domestic services to certain cities in the United States; (2) DHL argues that it is entitled to summary judgment on Unishippers' claim that DHL breached the Reseller Agreement by "effectively" ceasing services to the U.S. Territory of Puerto Rico; and (3) DHL asserts that it is entitled to summary judgment on Unishippers' claim that DHL did not provide it with the lowest rates of all resellers.

A.  **BREACH OF CONTRACT CLAIM BASED ON STOPPING DOMESTIC SERVICES TO CERTAIN CITIES IN THE UNITED STATES (A.K.A. THE "WHITE SPACE" REDUCTIONS)**

DHL argues that it did not breach the Reseller Agreement by stopping domestic services to certain cities in the United States because the National Account Agreement and Reseller Agreement did not require DHL to provide domestic shipping to specific cities – or to every city. In fact, DHL contends, the Agreements specifically contemplate that the services DHL offered could change.

Unishippers, however, contends that these "White Space" reductions were the first step in DHL's 2008 withdrawal from the U. S. domestic market, which DHL had been secretly planning since December 2007. Unishippers argues that, although DHL had represented to Unishippers and other resellers that this restructuring would simply remove excess capacity through a "pull back in sparsely populated markets," "improve efficiency in the Domestic Express business," and that "with the chosen path DHL will STAY and maintain a significant presence in the U.S. market," the actual effect was quite different.[4] According to Unishippers, the effect of the restructuring was an over 25% reduction in DHL's shipping revenues, with over 80% of DHL's customers being negatively affected. In addition, it resulted in a 34% revenue decline for Unishippers and had a negative impact on its franchisees in less populated areas.

Having considered the evidence presented by both parties, the court agrees with Unishippers that there are questions of fact that preclude summary judgment on whether DHL's white space restructuring breached the Agreement. In other words, there is a question of fact regarding whether DHL's White Space curtailment of services was so extensive as to constitute a

---

[4] Unishippers' Mem. in Opp'n at x, Docket No. 272.

failure to perform on its part. DHL has not demonstrated, as a matter of law, that its May 2008 White space restructuring was not a breach of the Agreement, and thus its motion on this claim is denied.

**B.     BREACH OF CONTRACT CLAIM BASED ON DHL'S CHANGE IN SERVICES TO AND FROM THE U.S. TERRITORY OF PUERTO RICO**

DHL contends that it has never ceased providing shipping services to and from Puerto Rico and that the changes it made to service to Puerto Rico did not "effectively" cease services there. It also contends that it was not obligated to provide services to and from Puerto Rico in any event.

Unishippers contends, however, that DHL breached the National Account Agreement through its changes in the treatment of Puerto Rico, which effectively put Unishippers' Puerto Rico franchise out of business. Under the Agreement, Airborne included the U.S. territory of Puerto Rico as part of its domestic network, using domestic air bills and pricing. As a result, Unishippers issued a Puerto Rico franchise in 1995, only one year after entering into the National Account Agreement with Airborne. After DHL acquired Airborne in 2003, it began changing the way it treated Puerto Rico.

According to Unishippers, DHL first stopped providing Second Day Service. Then, DHL moved Puerto Rico out of its domestic network into an international destination, which, according to Unishippers, made it unprofitable for Unishippers' franchisee to resell its services (because FedEx and/or UPS still included it in their domestic network). As a result of DHL's actions, Unishippers argues, Unishippers' Puerto Rico franchise went out of business in 2008, and Unishippers suffered damages as a result.

9

DHL has not established as a matter of law that the terms of the National Account Agreement permitted it to simply cease providing any services it chose. There are disputed issues of fact about whether its decision to cease domestic service to and from Puerto Rico breached the Agreement, and DHL's motion for partial summary judgment on this claim is therefore denied.

C.  **BREACH OF CONTRACT CLAIM BASED ON DHL'S ALLEGED FAILURE TO PROVIDE UNISHIPPERS WITH THE LOWEST RATES OF ALL RESELLERS**

Section 2.05 of the National Account Agreement provides that Unishippers will be given the lowest rates of any reseller "for comparable volume of business." DHL contends that none of the three resellers named by Unishippers meets the "comparable volume of business" requirement that triggers the lowest rate provision. Accordingly, DHL asks the court to rule, as a matter of law, that the other resellers were not "comparable" to Unishippers.

However, according to Unishippers, DHL gave lower rates to at least three resellers (Worldwide, USS Logistics, and Costco)[5] and therefore breached the Agreement in that regard. First, Unishippers contends that it was always one of DHL's two biggest resellers, and in fact was the largest reseller in terms of sales volume until at least 2005. As a result, according to Unishippers, for at least the period of 202-2005, Unishippers should have received the lowest rate of any reseller, and it did not.

Next, Unishippers argues, DHL has not produced the sales volume information necessary to test DHl's assertion that the other resellers are not "comparable." Unishippers asserts that

---

[5] A fact question also exists as to the meaning of "reseller" and whether Costco is a "reseller" under the contract.

DHL cannot offer opinions or summaries regarding this information when it has not produced the underlying information to Unishippers.[6]

Finally, Unishippers has presented evidence from the Airborne representative who negotiated the Agreement. The Airborne representative testified that Unishippers did not want others "doing a lesser volume than [Unishippers] at more favorable rates." As a result, Airborne agreed that it would not give better rates to anyone that had a comparable volume of business *or less*. Therefore, according to Unishippers, because the meaning of the word "comparable" is not defined in the Agreement and is ambiguous, parol evidence demonstrates that, even if other resellers like USS Logistics and Costco sold less volume than Unishippers, they were not entitled to better rates.

The court finds that there are disputed issues of fact that preclude summary judgment on this issue, including the meaning of a "comparable volume of business" and what constitutes a "reseller." The court cannot rule as a matter of law that the other resellers are not comparable or that Costco is not a "reseller," particularly when Unishippers has not been able to analyze the underlying data.

---

[6] DHL relies on the Declaration of Hank Gibson for its summary judgment argument that Worldwide, USS Logistics, and Express One do not have a "comparable volume of business," under the terms of the 1994 National Account Agreement. Unishippers, however, argues that the Gibson Declaration is full of legal conclusions and conclusory and self-serving statements. Unishippers also points out that DHL has not produced the sales volume information that Mr. Gibson purports to summarize and compare.

The court will strike the Gibson Declaration because it is unclear on what information Mr. Gibson has relied to reach his conclusions and therefore many of his assertions lack foundation. DHL has not produced the underlying information to Unishippers, and Unishippers is entitled to analyze this information itself and not accept the unchallenged representations of a DHL representative.

### III. UNISHIPPERS' OBJECTION TO MAGISTRATE'S ORDER DENYING PLAINTIFF'S MOTION TO COMPEL RESELLER RATE INFORMATION

Unishippers has filed an Objection to the Magistrate's Order, which denied Unishippers' Motion to Compel Reseller Rate Information.[7] The Objection pertains to the information about DHL's relationship with Costco – not the other entities originally involved in the motion to compel. At the time the Magistrate ruled on Unishippers' motion, it was not clear that there was an ambiguity in the contract regarding the meaning of "comparable volume of business," and that extrinsic evidence existed to suggest that the term might include *lesser* volumes of business. After extensive briefing by both parties on Unishippers' Objection and on DHL's Motion for Partial Summary Judgment, the issue is now more fully understood by the court, and the court agrees with Unishippers that the contract and rate information as it relates to DHL's relationship with Costo must be produced. The Magistrate's Order, dated July 6, 2010, will be set aside.

### IV. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that (1) Plaintiff Unishippers Global Logistics, LLC's ("Unishippers) Motion for Partial Summary Judgment on DHL's Asserted Defense to Breach of Contract Claim [Docket No. 247 is] GRANTED; (2) Defendant DHL Express (USA) Inc.'s ("DHL") Motion for Partial Summary Judgment on Plaintiff's Breach of Contract Claim [Docket No. 252] is DENIED; (3) Unishippers' Motion to Strike Declaration of Hank Gibson [Docket No. 266] is GRANTED; and (4) Unishippers' Objection to Magistrate's Order Denying Plaintiff's Motion to Compel Reseller Rate Information [Docket No. 260] is SUSTAINED. The Magistrate's Order, dated July 6, 2010, [Docket No. 229] is hereby

---

[7] *See* Docket No. 260.

SET ASIDE, and DHL is directed to produce, within thirty days, the requested information and documents regarding its relationship with Costco. The court will soon issue a Trial Order, setting forth deadlines relating to the upcoming jury trial, which has been set for nine days beginning on July 18, 2011.

DATED this 29th day of April, 2011.

BY THE COURT:

_____
DALE A. KIMBALL
United States District Judge